IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JORDAN MARTINEZ LAGUNA,<br><br>    Petitioner,<br><br>v.<br><br>REUBEN LEYVA, Acting Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE/ERO); BRIAN HENKE, Field Office Director for Las Vegas/Salt Lake City; MARKWAYNE MULLIN, Secretary United States Department of Homeland Security; and TODD BLANCHE, Acting U.S. Attorney General,<br><br>    Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR HABEAS CORPUS**<br><br>Case No. 2:26-cv-00607-JNP<br><br>Chief District Judge Jill N. Parrish |

On July 1, 2026, Petitioner Jordan Martinez Laguna ("Mr. Martinez") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he was being unlawfully detained in violation of the Constitution and laws of the United States. *See* ECF No. 1. For the following reasons, the court grants the petition for habeas corpus.

## BACKGROUND

Mr. Martinez is a 26-year-old citizen of Venezuela who has resided in the United States since April 2023. ECF No. 1 ¶ 3. He entered the United States without admission or inspection and was apprehended by United States Custom and Border Protection officers shortly after entry. *Id.* ¶¶ 3, 65. After being detained for a few days, Mr. Martinez was released pursuant to a Form I-220A, an Order of Release on Recognizance. ECF No. 1-1. This release was conditioned on

compliance with certain requirements, including periodic check-ins with the Salt Lake City Immigration and Customs Enforcement ("ICE") office and not violating any local, state, or federal laws or ordinances. *Id.* At the time of his release, Mr. Martinez was placed in removal proceedings under 8 U.S.C. § 1229a and was issued a Notice to Appear. ECF No. 1-2. In those removal proceedings, Mr. Martinez filed an application for asylum, which remains pending. ECF No. 1 ¶ 69.

On April 30, 2026, Mr. Martinez was arrested by local police near Kearns, Utah on charges of domestic violence. *Id.* ¶¶ 4, 71. The charges against Mr. Martinez were eventually dismissed on June 30. ECF No. 1-3. However, in the early morning of July 1, Mr. Martinez was released to ICE custody pursuant to an ICE detainer after the conclusion of the criminal proceedings. *Id.* ¶ 4; *see* ECF No. 7-1 (July 1, 2026 ICE Arrest Warrant).

Later on July 1, Mr. Martinez filed the instant petition through counsel. ECF No. 1. The petition argued in part that Mr. Martinez was being detained pursuant to Respondents' novel interpretation of 8 U.S.C. §§ 1225 and 1226, an interpretation which this court and the Tenth Circuit have already ruled to be unlawful. *See Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026); *Lemus Cristales v. Arbon*, No. 2:26-CV-00217-JNP, 2026 WL 892874 (D. Utah Mar. 31, 2026). In his petition, Mr. Martinez alleges that ICE did not allow him to challenge the grounds of his detention or request bond. ECF No. 1 ¶ 18. Mr. Martinez thus seeks for the court to order his immediate release or, in the alternative, to order a bond hearing. ECF No. 1 ¶ 10.

The court entered an Order to Show Cause that same day, requiring Respondents to address why the petition for habeas corpus should not be granted. *See* ECF No. 3. On July 7, 2026, Respondents filed their response. ECF No. 7. Counsel for petitioner filed a reply brief the same

day. ECF No. 8. Mr. Martinez is currently detained at the Sweetwater County Jail in Wyoming. ECF No. 7-3.

<strong>LEGAL STANDARD</strong>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating his custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.").

<strong>ANALYSIS</strong>

Respondents assert that "Mr. Martinez has not presented any evidence to show that he was in fact improperly detained under 8 U.S.C. § 1225(b)(2)(A) rather than 8 U.S.C. § 1226(a), nor has he presented any evidence to show that he ever requested a bond hearing from the federal respondents or that the federal respondents ever denied him a bond hearing." ECF No. 7 at 1–2. Respondents therefore request that the court dismiss the petition based on (1) a lack of subject matter jurisdiction and (2) a failure to exhaust administrative remedies. *Id.* at 2.

Before addressing these arguments, and the petition in general, the court notes that it does

3

appear that Mr. Martinez has not yet requested bond.[1] *See* ECF No. 7-2 (email exchanges between counsel for Respondents and counsel for Petitioner). Respondents have also provided to the court a copy of the July 1, 2026 ICE Arrest Warrant, which was issued pursuant to § 1226, rather than § 1225. ECF No. 7-1.

## I.    Subject Matter Jurisdiction

With those facts clarified, the court first addresses the subject matter jurisdiction argument. Respondents allege that had Mr. Martinez requested a bond hearing that was denied, there would be Article III standing for this court to hear the petition. ECF No. 7 at 5. However, Respondents argue that because Mr. Martinez has not yet requested bond, there is no injury-in-fact sufficient for subject matter jurisdiction under Article III. *Id.*

Respondents' subject matter jurisdiction argument is mistaken. The general habeas statute, 28 U.S.C. § 2241, grants federal courts subject matter jurisdiction over writs of habeas corpus in which a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. *See Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291–92 (10th Cir. 2001). In his petition, Mr. Martinez claims that his current detention is in violation of the Constitution and laws of the United States. He argues not only that he is at minimum entitled to a bond hearing but also that he is entitled to immediate release, especially considering his prior release on his own recognizance. ECF No. 1 ¶ 84.

Irrespective of whether his claims are meritorious, they are clearly cognizable under habeas

---

[1] As Respondents highlight, Mr. Martinez's petition appears to falsely state that "ICE did not allow Petitioner to . . . request bond." ECF No. 1 ¶ 18. While not excusing the error, the court recognizes that counsel for immigrant detainees must often file petitions for habeas corpus within just a few hours and with limited information or else risk their clients' transfer or removal. Counsel for Respondents often face similar timing and information challenges as they respond to these habeas petitions. The court thus urges both parties to endeavor to provide the court with the most accurate information as soon as possible in these types of petitions.

review. *See Dimmick v. Bourdon*, 769 F. App'x 616, 618–19 (10th Cir. 2019) (unpublished) ("In this circuit, a prisoner who challenges the fact or duration of his confinement and seeks immediate release or a shortened period of confinement, must do so through an application for habeas corpus." (citation modified)); *Imran v. Harper*, No. 25-30370, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026) (unpublished) (stating "district courts have subject-matter jurisdiction to review § 2241 petitions challenging the lawfulness of a noncitizen's detention"); *Francois v. Garcia*, 509 F. Supp. 3d 668, 671 (S.D. Tex. 2020) ("The 'instructive principle' is that challenges to the fact or duration of confinement are properly brought under habeas . . . ."). The court retains jurisdiction until it determines those claims to be insufficient to sustain jurisdiction. *See Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1272 (10th Cir. 2018) (stating "courts 'always have jurisdiction to determine [their] jurisdiction'"). The court has subject matter jurisdiction over Mr. Martinez's petition. *See Reyes Vasquez v. Noem*, No. 2:25-CV-01146-JNP, 2026 WL 309631, at *5 (D. Utah Feb. 5, 2026).

## II.    Administrative Exhaustion

Respondents next argue that the petition should be dismissed because Mr. Martinez failed to exhaust his administrative remedies before filing. Respondents argue that "[f]or immigration detainees who, like Mr. Martinez, challenge detention without a bond hearing, the administrative remedy is to simply request a bond hearing before an immigration judge." ECF No. 7 at 2.

In support of this argument, Respondents cite Tenth Circuit case law addressing § 2241 petitions filed by federal prisoners. Specifically, the Tenth Circuit has stated that "[t]he exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement. A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (internal citations removed).

This Tenth Circuit precedent is firmly grounded in the criminal detainee context, however. *See, e.g.*, *Staples v. Maye*, 711 F. App'x 866, 867 (10th Cir. 2017) ("Before filing a § 2241 petition, *federal prisoners* must exhaust their administrative remedies." (emphasis added)); *Jimenez Chacon v. Lyons*, 811 F. Supp. 3d 1299, 1307 (D.N.M. 2025) ("[T]he Tenth Circuit has not addressed whether this requirement applies in the immigration context, and the INA only explicitly requires exhaustion of administrative remedies when challenging a final removal order."). In the civil immigration context, courts have been more reluctant to impose an administrative exhaustion requirement. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1015–19 (7th Cir. 2004); *Sanchez v. Noem*, 821 F. Supp. 3d 1276, 1284 n.2 (D.N.M. 2026). This court likewise declines to affirmatively impose an administrative exhaustion requirement here. *See Jimenez Chacon*, 811 F. Supp. 3d at 1307, 1307 n.3 (noting that the Supreme Court has stated in *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), that "where Congress [has] not clearly required exhaustion, sound judicial discretion governs," and that *McCarthy* required courts to weigh the institutional interests in exhaustion against the individual interests in prompt judicial review).

In any case, while Respondents are correct that bond hearings are generally requested by immigration detainees pursuant to 8 C.F.R. § 1003.19(b), Respondents ignore the fact that Mr. Martinez is not just requesting a bond hearing. In fact, he primarily argues that he should be immediately released given his prior release on his own recognizance and the dismissal of his criminal charges. A custody redetermination hearing is not a remedy he must pursue if he believes his initial detention itself, rather than a lack of ability to request bond, is in violation of his rights. There is no administrative exhaustion barrier at play for this requested relief.

### III.   Mr. Martinez's Petition

Having addressed Respondents' main arguments, the court now considers whether Mr.

Martinez is entitled to the relief he seeks. Mr. Martinez asks the court to order his immediate release or, in the alternative, to order a bond hearing. ECF No. 1 ¶ 10. He argues that his detention is both a violation of the Immigration and Nationality Act and a violation of due process. *Id.* ¶¶ 80–93.

Given the Tenth Circuit's recent ruling in *Santillan Quiroz v. Mullin*, Respondents make no claim that Mr. Martinez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026). This concession defeats Mr. Martinez's INA claim, which was solely based on his belief that ICE was detaining him pursuant to § 1225(b)(2). But Respondents do not address in their response Mr. Martinez's due process claim beyond stating—briefly, at that—that he is subject to detention under § 1226.[2] Unlike Mr. Martinez's INA claim, his due process claim does not turn solely on the § 1225-§ 1226 distinction. Rather, he claims that his continued detention is unlawful because he is being detained "despite DHS's prior

---

[2] Realizing this oversight, counsel for Respondents filed a motion arguing that the court should disregard Mr. Martinez's due process claim as it relates to a right to a pre-deprivation hearing. ECF No. 9 at 4–5. Respondents assert that Mr. Martinez raised this claim for the first time in his reply brief. To support this argument, they note that Mr. Martinez did not invoke an on-point decision from this court relating to pre-deprivation hearings (*Peña Becerra*) until his reply brief.

The court denies the motion. While Mr. Martinez's petition did not explicitly ask for a pre-deprivation hearing, it repeatedly asked for immediate release from detention on the basis that no material circumstances have changed since Mr. Martinez was released on his own recognizance. Mr. Martinez asserts in his petition, within the due process claim, that "Respondents have not provided Petitioner any meaningful process to challenge his renewed detention." ECF No. 1 ¶ 88. Respondents, in their response, only addressed the potential for a bond hearing, not the primary remedy sought—immediate release until Respondents make an individualized determination of danger or flight risk or a finding that he violated the conditions of his prior release. *Id.* This requested remedy is in essence a pre-deprivation hearing.

Moreover, this court's Order to Show Cause required Respondents to "specifically address how, if at all, the facts and law applicable to this Petition are distinguishable" from "this court's prior rulings." ECF No. 3 at 3. The Order went as far as to specifically cite to *Peña Becerra* in listing this court's prior orders. Despite the clear overlap in facts, Respondents did not address *Peña Becerra* in their response.

7

release determination, despite his compliance with release conditions, and despite the dismissal of the criminal charges that caused his transfer to ICE custody." ECF No. 1 ¶ 89.

With respect to Mr. Martinez's due process claim, the court finds its analysis in a prior case, *Peña Becerra v. Sparks*, to be directly applicable. No. 2:26-CV-00212-JNP-DBP, 2026 WL 915439, at *3–*7 (D. Utah Apr. 3, 2026). In *Peña Becerra*, the petitioner had originally been released on his own recognizance under 8 U.S.C. § 1226. After a few years, Petitioner was arrested for possession of marijuana and for operating a vehicle without a license or valid insurance. A state judge ordered him released on bail, but ICE officers detained him. *Id.* at *1. The court ordered him immediately released, finding that the Due Process clause imposed limits on Respondents' ability to re-detain the petitioner and revoke bond under § 1226(b). *Id.* at *5.

The facts of this case almost mirror those in *Peña Becerra*. Here, Mr. Martinez was originally released on his own recognizance under 8 U.S.C § 1226. After a few years, he was arrested and then subsequently detained by ICE. Admittedly, the charges in the two cases differ, with Mr. Martinez being arrested on charges of domestic violence. But unlike in *Peña Becerra*, where the petitioner was released on bail while the charges were pending, Mr. Martinez was released from state custody when the charges were fully dismissed.

Because the government originally released Petitioner pursuant to § 1226(a), he is "protected by the Due Process Rights created by § 1226(a)." *Otero on behalf of Caicedo-Ruiz v. Kaiser*, No. 25-CV-06536-NC, 2025 WL 3301056, at *8 (N.D. Cal. Nov. 26, 2025). The court's *Mathews v. Eldridge* due process inquiry in *Peña Becerra* remains largely the same. Mr. Martinez has a substantial private interest in remaining out of detention on bond, especially since he has been out on bond since 2023. There is also a significant risk of erroneous deprivation of that liberty interest here. Mr. Martinez's prior release in 2023 indicates that ICE "necessarily determined" that

8

Mr. Martinez "would not pose a danger and was likely to appear for future proceedings." *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1198 (W.D. Wash. 2025). Mr. Martinez was not convicted of any crime, he faces no current charges, and there is no suggestion that he is in violation of his conditions of release. Finally, the court does not find that a pre-deprivation hearing would impose a costly burden on the government or unduly interfere with the government's interests in enforcing immigration law and protecting the public. At bottom, "[i]f the government wishes to re-arrest [Mr. Martinez] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). A pre-deprivation hearing is warranted.

Because the court finds that Respondents are unlawfully detaining Mr. Martinez under § 1226, Petitioner has met his burden. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."). The court thus orders that Respondents release Mr. Martinez, and if they seek to re-detain him, they must provide him with notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that Mr. Martinez is a flight risk or danger to the community.[3] *See Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1160

---

[3] There is currently a circuit split on whether the petitioner or the government bears the burden of proof at a bond hearing under § 1226(a). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203–05 (9th Cir. 2022) (discussing the circuit split). The Tenth Circuit has not yet spoken directly to this issue. *Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026). However, in its recent decision in *Santillan Quiroz v. Mullin*, the Tenth Circuit cited approvingly to a District of New Mexico decision, *Requejo Roman v. Castro*, when ordering the Government to either provide a bond hearing to the petitioner within seven days or release. No. 26-6019, 2026 WL 1876709, at *17 n.13 (10th Cir. June 30, 2026) (citing to *Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1285 (D.N.M. 2026)). The district court in *Requejo Roman* had ordered that the Government shall bear the burden of proving, by clear and convincing evidence, that the petitioner was a flight risk or danger to the community. *Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1285 (D.N.M. 2026).

(D. Colo. 2026) ("As a general matter, the Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake." (quoting *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 944 (D. Colo. 2025)).

## CONCLUSION AND ORDER

For the foregoing reasons, the court ORDERS as follows:

1. Mr. Martinez's petition for a writ of habeas corpus is GRANTED. ECF No. 1.

2. Respondents' motion to disregard a new claim raised in a reply brief is DENIED. ECF No. 9.

3. Respondents are ORDERED to either immediately release Mr. Martinez or to release Mr. Martinez in Salt Lake City as soon as practical and without undue delay, based on Mr. Martinez's preference. If applicable, Respondents must provide a status report within 48 hours detailing the release plan and any associated timeline. Respondents must also provide a status report informing the court of Mr. Martinez's release within 24 hours of the release.

4. Respondents are ORDERED, at the time of release, to provide Mr. Martinez any personal effects and identification documents that were confiscated from him.

5. Respondents are ENJOINED from imposing further restraints on liberty (e.g., electronic monitoring) that were not imposed on Mr. Martinez prior to his 2026 arrest, unless those restraints are determined to be necessary at a future pre-deprivation or custody hearing. Mr. Martinez must be released to the same legal status and conditions he enjoyed prior to the 2026 arrest.

6. If Respondents seek to re-detain Mr. Martinez, absent exigent circumstances, they must provide Mr. Martinez notice of at least seven days before a pre-deprivation hearing

10

before an immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Mr. Martinez is a flight risk or danger to the community. The respondents are ENJOINED from detaining Mr. Martinez on the basis that he is subject to detention under 8 U.S.C. § 1225(b)(2).

DATED this 10th day of July, 2026.

BY THE COURT:

Jill N. Parrish
United States Chief District Judge